WILLIAMS *v.* DETROIT FIRE & MARINE INS. CO.

INSURANCE — WINDSTORM — DANCE HALL — EVIDENCE — BURDEN OF PROOF.

In action under windstorm insurance policy for damage to frame dance hall, evidence showing manner in which building fell, rattling of tar paper on house 300 feet from dance hall and falling of tree 80 rods from dance hall *held,* insufficient to sustain plaintiff's burden of showing damage was caused by windstorm as contemplated in the policy.

Appeal from Newaygo; Pugsley (Earl C.), J. Submitted April 16, 1937. (Docket No. 103, Calendar No. 39,467.) Decided May 21, 1937.

Assumpsit by Adrian Williams against Detroit Fire & Marine Insurance Company on a windstorm insurance policy. Verdict and judgment for plaintiff. Reversed without new trial.

*William J. Branstrom,* for plaintiff.

*Smith, Searl & Strawhecker,* for defendant.

Sharpe, J. June 18, 1935, defendant insurance company issued a fire insurance policy to plaintiff on a frame building used as a dance hall on the north side of Sand Lake, Newaygo county, and for an additional premium the policy was extended to cover loss or damage by windstorm, cyclone, or tornado to an amount equal to but not exceeding that covering loss or damage by fire.

The structure insured was a two-story building, the lower portion being used as a bath house. The dance hall was 40 by 60 feet with a rear lean-to 10 by 20 feet for the orchestra. It was built in 1934, facing south, and close to the shore line of a lake that was about one-half mile long and one-fourth mile wide. The roof was round with a supporting arch through the center. The frame was built of two by fours and four by fours, the roof was constructed of matched lumber with heavy tar and felt paper. On January 11, 1936, it was discovered that the building had been damaged. Part of the south half of the roof was down on the dance floor, the rear or north portion of the building was only slightly damaged, the east wall had fallen somewhat to the east, and the south section of the roof extended over the south wall and lumber and timbers were scattered as far as 25 feet from the original wall of the building.

Plaintiff began suit for damages, the cause was submitted to a jury and a verdict rendered for plaintiff. At the close of plaintiff's proofs, defendant made a motion for a directed verdict on the ground that there was no issue of fact to be submitted to a jury. This motion was denied as well as a motion for a new trial. Defendant appeals.

The trial court in submitting the case to the jury gave the following instruction as his interpretation

of the meaning of the word "windstorm" as found in the policy of insurance:

"The word or expression 'windstorm' is to be distinguished from the word 'wind.' The word is defined as a storm characterized by high wind with little or no precipitation. As used in the policies in suit it should be considered as something more than an ordinary gust of wind, no matter how prolonged and it takes its meaning, measurably at least, from the other words with which it is associated, that is, tornado and cyclone, but it need not have either the cyclonic or the twirling or whirling features which usually accompany tornadoes or cyclones; but it must be more than an ordinary current of air no matter how long continued. In other words, it must assume the aspect of a storm that is an outburst of tumultuous force, and unless the plaintiff has shown that the damage to this building was caused by a windstorm, by a preponderance of the evidence, that is, by evidence that is more convincing to you than the other evidence, then your verdict must be for the defendant."

The only question for our consideration is, whether the building was blown down by a windstorm within the meaning of that expression as used in the insurance policy and as defined by the trial court.

Plaintiff submitted evidence to the effect that the building was well and substantially constructed in 1934; that a witness who lived 300 feet east of the building saw it standing at 5 p. m., January 10th; that he went to bed about 10 p. m., and during the night was awakened by a noise caused by the rattling of the paper on the roof of the house in which he lived; that the next morning he was told that the building had blown down; that he noticed that part of the roof on the south side of the building was on the dance floor; that other parts of the building had

fallen on the floor, while the gable appeared to be blown away from the building.

We have examined the evidence carefully and from the manner in which the building fell we do not find any evidence that a windstorm was the cause. Nor do we find in the rattling of the tar paper or the falling of a tree 80 rods away from the dance hall any evidence of a windstorm.

In view of the fact that the burden of proof lies with plaintiff to show that the damage was caused by a windstorm as contemplated in the insurance policy, and there being no proof to substantiate plaintiff's claim we are constrained to reverse the judgment without a new trial. Defendant may recover costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSH-NELL, POTTER, and CHANDLER, JJ., concurred.