RODDIS LUMBER & VENEER COMPANY v. AMERICAN ALLIANCE INSURANCE COMPANY.

1. INSURANCE—FIRE—EXCLUSION CLAUSE—AFFIRMATIVE DEFENSE—BURDEN OF PROOF.

Insurer who asserted an affirmative defense that loss for which insured sought recovery came under exclusion clause of fire insurance policy has the burden of proof in such respect.

2. SAME—EXCEPTED LOSS—BURDEN OF PROOF—EXPLOSION.

Generally, limitations of liability and loss from an excepted cause in a fire insurance policy, are matters of defense to be specially pleaded by the insurer who usually has the burden of showing damages claimed fall within an exception of loss by explosion.

3. SAME—FIRE—EXPLOSION OF APPARATUS CONTAINING STEAM—EXCEPTED RISK—FINDING OF COURT.

Finding of trial court that 12″ steam cylinder 36′ long and containing a piston, attached to a rod connected with a wheeled carriage on which logs were propelled toward saw in plaintiff insured's sawmill, was not a steam pipe nor a steam

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur, Insurance, § 1446.
[1, 2] Liability of property insurer as affected by explosion.  13 ALR 883; 65 ALR 934.
[2] 29 Am Jur, Insurance, § 1425.
[3] 29 Am Jur, Insurance, § 1021.
[4] 23 Am Jur, Foreign Corporations, § 21.
[5] 29 Am Jur, Insurance, § 1496.

engine was not against clear weight of evidence, hence insurer under fire insurance policy containing exception clause as to explosions of steam pipes and steam engines was not forbidden from assuming risk of such explosion of such apparatus by statute (CL 1948, § 531.1).

4. Corporations—Foreign Corporations—Ultra Vires—Statutes.
   Plea of *ultra vires* is not available to foreign corporation in action against it by corporate insured (CL 1948, § 450.11).

5. Insurance—Excepted Risk—Evidence—Steam Feed.
   Reception of testimony on issue as to whether or not apparatus containing steam, used to operate carriage for conveying logs against a saw in insured's sawmill and variously referred to in the sawmill trade as "shotgun steam feed" or "steam feed" was a steam pipe or a steam engine was not error in insured's action under fire insurance policy excepting explosions of steam pipes and steam engines.

Appeal from Gogebic; Landers (Thomas J.), J. Submitted January 10, 1951. (Docket No. 22, Calendar No. 44,918.)   Decided April 3, 1951.

Assumpsit by Roddis Lumber & Veneer Company, a Michigan corporation, against American Alliance Insurance Company, a foreign corporation, for money due under a fire insurance policy. Judgment for plaintiff. Defendant appeals. Affirmed.

*Ivan D. Wright,* for plaintiff.

*Edward W. Massie* and *Wolfe, O'Leary & Kenney,* for defendant.

Reid, C. J. This is a suit brought by plaintiff on policies of insurance claimed by plaintiff to cover damages to its sawmill and damages arising from the interruption of the operations of the sawmill due to explosion. The trial was before the court without a jury. From a judgment in favor of plain-

tiff, defendant appeals. Liability is disputed but the amount of damages is agreed on.

The plaintiff Roddis Lumber & Veneer Company is a Michigan corporation. Its principal place of business is at Ironwood, Michigan, where it owns and operates a sawmill and planing mill in the manufacture and sale of lumber and forest products. The defendant is a New York corporation which writes fire insurance in the State of Michigan. While certain policies issued to plaintiff by the defendant were in full force and effect, on May 13, 1947, there occurred an explosion of a cylinder on plaintiff's sawmill premises. The cylinder, a 12-inch iron cylinder, consisted of 6 sections, each of which was about 6 feet in length. The sections were joined together at each end so as to form a steam chamber or cylinder 36 feet in length, within which cylinder was a piston attached to a rod, the outer end of which rod was attached to a carriage set on wheels. The steam in the cylinder operated on the piston and rod so as to propel the carriage back and forth over steel rails and the carriage pushed the log against the saw in the process of sawing the logs into lumber.

The said 36-foot cylinder or steam "feed" was variously referred to in the testimony and in the pleadings. Plaintiff's declaration referred to said steam chamber or cylinder as a "shotgun steam feed," and in the testimony the steam chamber or cylinder in question was also sometimes referred to as a direct acting steam feed or steam chest. Defendant's answer averred that what the plaintiff's declaration called a "shotgun steam feed" constitutes a steam engine or a steam pipe.

There is an exclusion provision in each of the policies above referred to, *i.e.*, form No 61, being a rider attached to each of the policies. The rider is not provided in the Michigan standard policy but was

prepared by defendant insurance company. The rider is as follows:

"In consideration of $........ premium, and subject to provisions and stipulations (hereinafter referred to as 'provisions') herein and in the policy to which this indorsement is attached, including riders and indorsements thereon, the coverage of this policy is extended to include direct loss by WINDSTORM, HAIL, EXPLOSION, RIOT, RIOT ATTENDING A STRIKE, CIVIL COMMOTION, AIRCRAFT, VEHICLES, AND SMOKE.  *  *  *

"Provisions applicable only to explosion: This company shall not be liable for loss by explosion, rupture or bursting of steam boilers, steam pipes, steam turbines, steam engines, flywheels owned, operated or controlled by the insured or located in the building(s) described in this policy.

"Any other explosion clause made a part of this policy is superseded by this indorsement."

Plaintiff claims that the policies cover the explosion of the cylinder in question. Defendant claims that the cylinder in question can be considered to be a steam engine or a steam pipe and therefore is excluded from the operation of the policies.

The principal question in dispute is whether the use in the rider of the words "steam pipe" and "steam engines" excludes the explosion in question from the coverage operation of the policies.

Plaintiff claims that the burden of proof was on defendant to show that the explosion was one within the exclusion of the rider and the court so ruled. Defendant claims that the court was in error in so holding. Against the objection of defendant, the plaintiff offered and the court ruled admissible, testimony of witnesses as to the meaning of the words, steam pipe and steam engine, and in some instances the testimony was limited to the meaning of the

words, steam pipe and steam engine, as those words are used in the sawmill business.

In the case at bar, the rider in question was a printed form prepared by and attached to the policy by the defendant insurance company. Plaintiff claims that the term steam engine as used in the rider in question is ambiguous and plaintiff invokes the rule as to ambiguities occurring in a policy of insurance drafted by the insurer. Defendant denies the applicability of such rule as to ambiguity.

In arriving at a determination of the meaning of the word "engine," there must be borne in mind its ancient derivation from the Latin word from which the English word ingenuity is derived, and the word "engine" originally and in the older books of the English language is applied to any complicated mechanism which is a product of human ingenuity; for instance, in the old phrase, engines of warfare, the engines referred to would not be called engines today.

Webster's New International Dictionary (2d ed), Unabridged, after reciting the ancient and obsolete uses of the word engine, has this to say among other things under 5.:

"Modern usage has limited the word to the *steam engine* and to some analogous machines as *air, gas* and *oil engines.*"

Mr. Young, a professor in mechanical engineering at the State college at Houghton, a witness produced by the defendant, testified among other things:

"There are various classifications of steam engines. There is the first one we ordinarily think of as a steam engine which has a cylinder, piston, crosshead, crank, flywheel and shafting, which is the ordinary conception of a so-called steam engine."

The same witness on cross-examination stated,

"The layman's conception of a steam engine is a machine which has a crosshead, connecting rod, crankshaft, and flywheel."

It is very apparent that the burst steam feed heretofore spoken of has not all such parts as described in the testimony of Professor Young.

Various witnesses were sworn and examined upon the subject of the meaning of the word steam engine. Mr. Ahonen, a witness produced by the plaintiff, is 50 years of age, lives at Ironwood, is president of a lumber company and a forest products company, and has been in the logging business since 1923 and engaged in the logging or sawmill business practically all of his working lifetime. He testified that in his sawmill there is what is commonly called a steam feed or shotgun steam feed, which is a long steam tube made out of sections about 5 feet long bolted together, approximately 10 inches in diameter inside, and having a long rod approximately 3 inches in diameter which is connected to the sawmill carriage and used for the purpose of running the sawmill carriage back and forth carrying the log against the saw. The witness also testified he was president of the Hemlock & Hardwood Organization, an organization made up principally of sawmill operators in northern Wisconsin and northern Michigan. Against objection by defendant, Mr. Ahonen also testified that the shotgun steam feed described by him, sometimes also called a steam feed, has not been to his knowledge in the lumber industry considered a steam engine; that the 2 terms, shotgun feed and steam feed, are the only terms that he ever heard as applied to the cylinder in question and further, that outside of the instant case, he had never heard the word steam engine applied to the apparatus he calls a steam feed or shotgun feed. He testified further that a steam feed has no flywheel and no

belt connection to any other machine, but is operated by steam valves (and the use of a lever). On cross-examination he testified,

"*Q.* Now, Mr. Ahonen, you would consider that steam cylinder a steam pipe, wouldn't you?

"*A.* Well, I would not consider that in sawmill language as a steam pipe. I would consider it as a steam cylinder because it is machined inside, although, of course, there could be some steel pipe that could also be machined.

"*Q.* It is cast iron steam pipe?

"*A.* It is cast iron material, yes.

"*Q.* It constitutes a cast iron pipe containing steam under pressure?

"*Mr. Wright:* [attorney for plaintiff] Just a second, that is objected to as calling for a conclusion.

"*A.* Well, whether it could be technically called a steam pipe or a cast iron steam pipe or a cast iron steam cylinder, I don't know.

"*Mr. Massie:* [attorney for defendant] It could be called either, couldn't it?

"*A.* Maybe technically it could, I wouldn't be able to answer the question, although we here in the sawmill industry consider it a cylinder and always call it either a steam feed or a shotgun feed.

"*Q.* Mr. Ahonen, what is your definition of a steam cylinder?

"*A.* My definition of a steam cylinder is a cylinder that is machined out so that it can have a piston in there.

"*Q.* You differentiate a pipe from a cylinder because in the case of a cylinder it is machined within in order to operate efficiently with a piston therein?

"*A.* Yes, from an ordinary pipe."

Much other testimony was given by several witnesses upon the subject of the meaning of the words, steam pipe and steam engine. We think plaintiff's attorney is fairly justified in his statement in saying as to the cylinder in question that the men who manu-

factured it and the men who use it never refer to it as a steam engine. The testimony of defendant's witnesses upon the meaning of the words, steam pipe and steam engine, as applied to the cylinder in question can be said to raise doubt as to the applicability of such words as steam pipe or steam engine to the cylinder in question. The rider in question having been printed and furnished by defendant, the following cases as to construction of a policy may be considered applicable: *Kipkey* v. *Casualty Ass'n of America,* 255 Mich 408; *C. & J. Commercial Driveway, Inc.,* v. *Fidelity & Guaranty Fire Corp.,* 258 Mich 624; *Boesky Brothers Twelfth Street Corp.* v. *United States Fidelity & Guaranty Co.,* 267 Mich 628; *Pastucha* v. *Roth,* 290 Mich 1; *Ornatowski* v. *National Liberty Ins. Co. of America,* 290 Mich 241; *Allor* v. *Dubay,* 317 Mich 281; *Hooper* v. *State Mutual Life Assurance Co. of Worcester, Mass.,* 318 Mich 384.

The trial court ruled that the defendant in the case having asserted an affirmative defense that the loss comes under an exclusion clause of the policy, has the burden of proof in that regard, quoting *Lever Brothers Company* v. *Atlas Assurance Co.* (CCA), 131 F2d 770, 778. We are of the opinion that the trial court was correct in so ruling.

As a general rule, limitations of liability and loss from an excepted cause, are matters of defense to be specially pleaded by the insurer. 29 Am Jur, p 1069.

It is generally held that the burden is on the insurer to show that damages claimed fall within an exception of loss by explosion. 13 ALR 893.

Defendant relies on *Williams* v. *Detroit Fire & Marine Ins. Co.,* 280 Mich 215, in which the policy sued on was for fire insurance but for an additional premium, loss occasioned by windstorm was covered. We held plaintiff must prove loss by windstorm.

That was not an exception but rather an addition to that defendant's liability. That opinion gives no support to the defendant in the instant case in which the dispute is over an exception to the insurer's liability.

Defendant claims it is not permitted by the statute, CL 1948, § 531.1 (Stat Ann 1949 Cum Supp § 24.401), to insure against such a loss as that occasioned by the explosion in question and that said section, which contains the following, "but [explosion] not to include steam boiler or flywheel explosion," governs fire insurance companies (which would include defendant) and classifies and limits the risks they may contract to assume.

As we herein determine as not against the clear weight of the evidence the finding of the trial court that the cylinder in question is not a steam engine, and since we consequently affirm such finding, it follows that CL 1948, § 531.1 does not forbid defendant to assume the risk of the explosion of the said cylinder, the "steam feed" in question.

Moreover, CL 1948, § 450.11 (Stat Ann § 21.11) provides in part:

"The plea of *ultra vires* shall not be made by any foreign corporation or any other party in any action brought in this State except (1) between such corporation and a director or officer thereof or a person having actual knowledge of the *ultra vires* character of the act or (2) by either party in an action between a shareholder and the corporation."

In consequence, defendant may not avail itself of *ultra vires* in the instant case.

Defendant claims error in the admission of testimony as to the meaning of the words steam engine and steam pipe and claims that such testimony was incompetent, that the construction of the words was for the court, and that the witnesses were not quali-

fied to give testimony on the subject. We think sufficient showing of competency of each witness was made.

In *Barker* v. *Citizens' Mutual Fire-Insurance Co.*, 136 Mich 626, cited in 9 Wigmore on Evidence (3d ed), p 205, we affirmed a judgment on a verdict where the meaning in a fire insurance policy of the words "winter season" in the Saginaw valley had been sworn to by witnesses and we did not disapprove of such testimony being given and the verdict was evidently based on such evidence at least in part.

We do not find error in the instant case because of the testimony being received by the court on the controverted meaning of the words, steam engine and steam pipe.

Other matters discussed do not require a formal decision at our hands. Defendant concedes that the amount of the judgment is correct if the judgment is to be affirmed.

There was testimony that a steam pipe is a connection between the chamber in which steam is generated and the chamber where the steam is to be used. The finding by the trial court in effect was that the steam feed is neither a steam pipe nor a steam engine, as those words are used in and about sawmill business. Such finding is not against the clear weight of evidence, and the same is affirmed.

The finding by the trial court that damages occasioned by the explosion in question were covered by the policy is supported in the testimony and is not against the clear weight of the evidence.

The judgment appealed from is affirmed. Costs to plaintiff.

Boyles, North, Dethmers, Butzel, Carr, Bushnell, and Sharpe, JJ., concurred.