CREE COACH COMPANY *v.* WOLVERINE
INSURANCE COMPANY.

1. APPEAL AND ERROR—EXPERT WITNESS—QUALIFICATIONS—INSTRUC-
TIONS.

Testimony of plaintiff's expert witness, a graduate structural
engineer, was properly not stricken in action against insurers
for wind damage to factory building, where he stated his
qualifications prior to giving his testimony without objection
by defendants, and pertinent instruction left it to jury to
determine the credibility of his testimony and his qualifications
(Court Rule No 37, § 16 [1945]).

2. EVIDENCE—EXPERT—INADEQUATE FACTUAL ASSUMPTION.

An erroneous or inadequate factual assumption should not dis-
qualify an expert's testimony in the absence of a showing
that under proper factual assumptions, his opinion would be
changed (Court Rule No 37, § 16 [1945]).

3. SAME—EXPERT WITNESS—WINDSTORM—SNOW.

Claimed discrepancy in graduate structural engineer's testimony
as to cause of collapse of snow-covered factory building during
windstorm *held*, insufficient basis for claim of error in refusal
to strike his testimony, because of an inadequate factual basis
therefor, where he was subjected to a lengthy cross-examination
which failed to change or modify his opinion that wind caused
the damage and trial court specifically referred matter of his
credibility to the jury.

4. APPEAL AND ERROR—INSTRUCTIONS CONSIDERED IN ENTIRETY.

The charge to a jury must be considered in its entirety when
reversible error is claimed in a portion thereof.

REFERENCES FOR POINTS IN HEADNOTES

[1–3]  20 Am Jur, Evidence § 763 *et seq.*; 3 Am Jur, Appeal and
Error § 1036.
[4]  3 Am Jur, Appeal and Error § 1097.
[5–7,9]  3 Am Jur, Appeal and Error §§ 1103–1105.
[8]  29A Am Jur, Insurance § 1329.
Causes of loss within coverage of policies of insurance against
tornadoes, cyclones, windstorms, or similar forces.  126 ALR 707,
166 ALR 380.

5. INSURANCE—WINDSTORM—INSTRUCTIONS.

Instruction to jury in action against insurers for damage to factory building by windstorm defining windstorm as "a wind of sufficient violence to be capable of damaging the insured property in the manner shown by the evidence" *held*, not reversible error, especially when jury was instructed that defendants claimed the damage was due to snow load on the roof and restricted them as to finding windstorm caused the damage unless they found there had been a windstorm of a violent and tumultuous force with a velocity of at least 60 miles per hour, that plaintiff had sustained its burden of proof, and there was evidence from which the jury would be justified in concluding that a wind of a velocity of 60 miles per hour caused plaintiff's damage.

6. SAME—PROXIMATE CAUSE OF BUILDING COLLAPSE—INSTRUCTION—WINDSTORM—POOR CONSTRUCTION—SNOW LOAD ON ROOF.

Instruction in action under windstorm insurance policies that evidence of poor construction of the building would not bar recovery since a building can be, and this building was, insured, whether properly constructed or not *held*, not reversible error, where defendants did not argue, or claim, the building went down because of faulty construction and did not request any instruction on such subject, their request as to proximate cause raising issue as to whether plaintiff had sustained its burden of proof of showing by a preponderance of the evidence that windstorm caused the damage rather than that the collapse was caused, as defendants contend, by snow load on the roof.

7. SAME—INSTRUCTION—INTEREST—UNJUST ENRICHMENT.

Instruction allowing 5% interest from date of denial of liability under windstorm insurance policies was not error, where there was contest as to liability at all but not as to the amount of damages, such amount was easily ascertainable then, and allowance of the interest would prevent unjust enrichment.

8. SAME—WINDSTORM—SNOWSTORM EXCLUSION CLAUSE.

Defense based on snowstorm exclusion clause was properly eliminated in action against windstorm insurers, where sought to be interposed on cross-examination of plaintiff's witness by requesting that he read provision bearing upon such matter from policies already in evidence and amendment of the answers was sought at the conclusion of plaintiff's proofs and issue of proximate cause as to whether the damage was due to windstorm or snow load on the roof was covered by correct instructions.

9. APPEAL AND ERROR—WINDSTORM INSURANCE—EVIDENCE—WEATHER
—CONSTRUCTION OF BUILDING.

   Claimed errors as to exclusion of defendants' evidence of weather
   records, admission of plaintiff's exhibits showing material for
   construction of its factory building, or denial of defendants'
   motion for judgment *non obstante veredicto* or for new trial
   in action against insurers under windstorm insurance policies
   *held*, without merit.

Appeal from Cass; Anderson, Jr. (David), J. Submitted January 10, 1962. (Docket Nos. 65–71, Calendar Nos. 49,094–49,100.) Decided May 18, 1962.

Actions by Cree Coach Company, Inc., a Michigan corporation, against Wolverine Insurance Company, a Michigan corporation, and other insurance companies, on extended coverage provisions in policies, for proportionate shares of loss sustained in damage to building by windstorm. Actions consolidated for trial and on appeal. Judgments for plaintiff. Defendants appeal. Affirmed.

*Cholette, Perkins & Buchanan (William D. Buchanan* and *Grant J. Gruel,* of counsel) and *James & Hoff,* for plaintiff.

*Schmidt, Smith, Howlett & Halliday (Laurence D. Smith,* of counsel), for defendants.

KELLY, J. On and prior to December 11, 1957, plaintiff was the occupant of a building near Marcellus, Michigan, which was being used for the manufacture of travel trailers.

The building was constructed during the late fall of 1956 and spring of 1957 and was first occupied during the summer of 1957.

On December 11, 1957, at approximately 11:45 p.m. the building collapsed, resulting in conceded damage to the building of $49,816.38 and damage to the contents in the amount of $12,782.93.

Ten insurance companies carried policies on the building, insuring against loss due to windstorm. Seven companies were sued in the instant appeal. Suits against 3 nonresident insurance companies were pending in the Federal court at the time of trial of the present cases.

Defendant insurance companies refused payment, claiming that the building collapsed because of accumulation of snow on the roof, and not by windstorm.

Plaintiff introduced testimony of various residents of the area who testified as to weather conditions on the day in question. Plaintiff also called, as an expert, Richard C. Byce, a structural engineer, who testified, over objections, that the damage to the building was caused by wind.

Defendants' proof included testimony of furnace men who were working to restore heat to the building on the day of its collapse, some neighbors who contradicted plaintiff's witnesses as to wind direction and weather conditions, 2 civil and structural engineers who testified the weight of snow on the roof caused the collapse of the building, and a meteorologist who testified concerning weather records in the area at the time. On rebuttal plaintiff introduced testimony and exhibits intending to show that the building had been completed in the fall of 1956 and had stood throughout that winter.

The court instructed the jury that if they found the defendants liable, they were to include interest at 5% from the date of denial of liability. The jury returned a verdict of $30,408.54, which included interest as above mentioned.

Defendants' motion for judgment *non obstante veredicto* or for a new trial was denied, and following the entry of 7 separate judgments these appeals were taken and the cases were again consolidated.

Appellants' "statement of questions involved" refer to error of the court in refusing to permit preliminary examination of plaintiff's expert witness; in refusing to strike his testimony because of lack of qualifications; in excluding defendants' evidence of weather records; in admitting plaintiff's exhibits as evidence that the building was completed in the fall of 1956; in improperly instructing in regard to "windstorm"; in refusing to permit defendants to base their defense on the policy provisions as to "snowstorm"; in instructing the jury to include interest in any verdict for plaintiff; and, in denying motion for judgment *non obstante veredicto* or for new trial.

*Did the trial court err in refusing to strike the testimony of the plaintiff's expert witness (Byce) because of his lack of qualification and inadequate factual basis for his opinion?*

The testimony disclosed that Byce received a bachelor of science degree in civil engineering and a master's degree in structural engineering from the University of Michigan; that structural engineering is a study of structures, beams, columns, and trusses of buildings and structures; that part of the training in structural engineering was the effect of winds on all types of structures; that he had studied and had discussions with an eminent authority on wind; that he had visited the wind tunnel when tests were being run on models of buildings.

Appellants state: "There is no question but what Mr. Byce is a qualified expert in the field of civil engineering but his qualifications do not extend into the field of wind activity on buildings or the behavior of winds."

Appellee answers by calling to this Court's attention the following:

"Appellants in this Court for the first time seek to collaterally attack Mr. Byce's professional qualifications. Appellants did not so challenge the qualifications at the time of the trial and did not raise the issue of lack of qualifications at any time when counsel for the plaintiff might have had an opportunity to inquire further into Mr. Byce's qualifications with particular reference to the interrelationship between structural engineering and wind which in fact Mr. Byce had already referred to when first giving his qualifications."

The testimony offered in regard to qualifications, the failure to object, plus the following instruction, refute defendants' claim that the court erred in refusing to strike because of lack of qualifications. The instruction is as follows:

"Both plaintiff and defendants have offered in evidence certain testimony known as expert or opinion testimony in support of their respective claims. You will examine and consider this testimony as you do any other testimony in this case, considering the background, training, and qualifications of the witnesses, their means of knowledge concerning the matter about which they testified, whether their testimony is consistent or inconsistent and you will exercise your common sense and good judgment in determining the weight and credit you will give to such testimony."

The testimony and exhibits established that where the end of the girders went over the top of the wall at the pilasters, there were angles or flanges welded onto the bottom of the girder.

It was agreed by all of the experts, including Byce, that the collapse originated at girder number 3.

Byce contended that since the inner flange of girder number 3 was bent inward, there must have been an

external force which caused the wall to fall into the building; that if the roof had first collapsed from the snow, the outer flange would have been bent, and since it was not, an external force was required, and this must have been provided by the wind.

Byce's original opinion was that the outer flange was the sole means of transmitting the force which would develop from a roof collapse. He later admitted that the notch would be of some help in transmitting this force.

Appellants contend "Byce was wrong on the facts when he said the flange would be the sole means of transmitting the force from a primary roof collapse and having based his entire opinion on the bent outer flange, his conclusion was invalid and should have been stricken."

The record discloses that Byce was subjected to a lengthy cross-examination and while he stated that the notch could transmit some force, he at no time changed or modified his opinion.

We quote with approval the author's comment in Honigman's Michigan Court Rules Annotated, 1959 supplement, p 95:

"In view of the intent of the new rule* to eliminate objections merely to the technique of questioning the expert, an erroneous factual assumption should not disqualify such testimony, without the further showing that a correct factual assumption would have changed his opinion. It would seem thus incumbent upon the cross-examiner to confront the expert with any claimed erroneous factual assumptions and to ascertain from him whether under proper factual assumptions, his opinion would be changed. If in the face of the correct facts, his opinion would remain unchanged, no harm has been done and there is then no valid reason to disqualify his initial conclu-

---

\* Court Rule No 37, § 16 (1945), adopted July 1, 1957, effective January 1, 1958. See 349 Mich xiii.—REPORTER.

sion. If his opinion would be changed by the proper factual assumptions, then of course his initial conclusion should not be permitted to stand and should be stricken. Thus, under the new rule, an erroneous or inadequate factual assumption should not disqualify the expert's testimony in the absence of a showing that under proper factual assumptions, his opinion would be changed."

The claimed discrepancy in Byce's testimony could have been, and undoubtedly was, argued to the jury. The jury (under the instruction previously set forth) was advised to consider the expert witnesses' "means of knowledge concerning the matter about which they testified, whether their testimony is consistent or inconsistent."

The court did not err in refusing to strike Byce's testimony because of the fact that there was an inadequate factual basis for his opinion.

Our decision that Byce's testimony was properly submitted to the jury obviates discussion on defendants' question: "Did the trial court abuse its discretion in refusing to permit preliminary examination of plaintiff's expert witness (Byce) as to the basis of his opinion concerning wind under section 16, Court Rule No 37 (1945), before permitting him to express his opinion to the jury?"

*Did the trial court err in instructing the jury that a "windstorm," within the policies in suit, is "a wind of sufficient violence to be capable of damaging the insured property in the manner shown by the evidence?"*

Appellants state:

"The problem of the definition of windstorm has not been before this Court since *Williams* v. *Detroit Fire & Marine Ins. Co.,* 280 Mich 215. * * * Since the *Williams Case, supra,* the rule in Michigan has been that 'windstorm' is to be distinguished from 'wind.' It must assume the aspect of a storm that is

an outburst of tumultuous force (*Williams,* p 217). * * * *Williams, supra,* has never been questioned, criticized, distinguished or overruled by this Court (although cited twice on the proposition that a directed verdict should be granted where plaintiff's proof is inadequate (*Roddis Lumber & Veneer Co.* v. *American Alliance Insurance Co.,* 330 Mich 81, 88; *Reynolds* v. *Great American Insurance Co.,* 334 Mich 1, 3). The *Williams'* definition of windstorm represents the law of Michigan and should have been the *only* definition given to the jury. Instead, the court recited part of the Michigan definition and then instructed the jury that a windstorm was any wind sufficient to damage the property, regardless of its condition. * * * In the present case, we requested the court to instruct the jury in the exact language of *Williams,* but the court refused to give this instruction despite the fact that *Williams* has never been criticized or overruled. This, we contend, was error."

The policy language in *Williams* v. *Detroit Fire & Marine Insurance Co.,* 280 Mich 215, differs from the language in the present policy. In *Williams,* the word "tornado" and "cyclone" were used in the same clause as "windstorm" while the policy in suit merely provides: "In consideration of the premium for this coverage * * * the coverage of this policy is extended to include direct loss by windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles, and smoke."

In *Williams, supra,* 217, this Court dealt with "windstorm" as follows:

. " 'The word or expression "windstorm" is to be distinguished from the word "wind." The word is defined as a storm characterized by high wind with little or no precipitation. As used in the policies in suit it should be considered as something more than an ordinary gust of wind, no matter how prolonged and it takes its meaning, measurably at least, from

the other words with which it is associated, that is, tornado and cyclone, but it need not have either the cyclonic or the twirling or whirling features which usually accompany tornadoes or cyclones; but it must be more than an ordinary current of air no matter how long continued. In other words, it must assume the aspect of a storm that is an outburst of tumultuous force, and unless the plaintiff has shown that the damage to this building was caused by a windstorm, by a preponderance of the evidence, that is, by evidence that is more convincing to you than the other evidence, then your verdict must be for the defendant.' "

Appellant singles out 1 sentence to complain about the court's instruction in the present case. We are, therefore, condensing the charge to show how the court instructed that (1) There is no evidence the damage could have resulted from a combination of snow and windstorm and it is therefore up to the jury to decide: Was the damage caused by windstorm or from weight of accumulated snow on the roof; (2) The jurors cannot find for plaintiff unless they find that a windstorm characterized by high winds assuming the aspect of a violent and tumultuous force with a velocity of at least 60 miles per hour inflicted the damage shown to have occurred to plaintiff's building; (3) The jurors must determine from the evidence whether there was a windstorm "within the definition of that term as I have given it to you"; (4) "The burden of proof is upon the plaintiff to show by a preponderance of evidence that a windstorm caused the damage to the building; the defendants contend that the building was damaged by snow load on the roof. There is no claim by either party that any cause other than these 2 was the cause of the damage. If you find that snow load was the cause of the damage your verdict will be for the defendant, no cause of action; also, if you find that the

evidence is equally balanced and does not preponderate in the claim of the plaintiff, that is, the plaintiff does not prove by a greater weight of the testimony that windstorm caused the damage, then your verdict shall be for the defendants, no cause of action."

We have repeatedly held that a charge must be considered in its entirety. We see no conflict between the: *Williams'* definition of "windstorm" and the instruction in the present case, and find that the court properly instructed in re windstorm.

Appellants contend that under the court's charge that "it would require a wind of at least 60 miles per hour," there was no evidence to sustain a jury award to plaintiff.

Evidence was introduced by neighbors, as follows: One testified that the wind blew roofing off his barn and that it whistled and sounded like a tornado; another said that "the wind was so strong it nearly took a screen door, nearly pulled me right out on the porch the wind was so strong"; another that the wind was rattling her windows and blowing branches off her trees and blew plastic off her kitchen window and some roofing off her barn and that "it made a whistling noise"; another that his: large elm trees, 40 to 60 feet high and 14 to 16 inches in diameter, had the north side broken out by the wind, and that a 15-foot section on each of the trees had split and fallen to the north; another that the wind blew his barn down.

Paul E. Johnson, the weather man, called by defendants, testified on cross-examination:

"*Q.* Now, Mr. Johnson, what kind of wind is it, you have a 14- to 16-inch elm tree and they are split off on the north side, toward the north, what kind of a wind is that?

"*A.* I don't follow you there.

"*Q.* There is a 14- to 16-inch elm tree split, the north side off, to the north, what kind of a wind would it take to do that?

"*A.* The only wind I know would be a tornado.

"*Q.* Or winds of a very high velocity?

"*A.* Very high velocity, that's right.

"*Q.* That's all."

There is nothing in the policies that requires there shall be exact proof as to how many miles per hour the wind is blowing. To require proof of witnesses as to the miles per hour would defeat the purpose of the policy. There was proof that would justify a jury concluding that a wind of a velocity of 60 miles per hour caused plaintiff's damage.

Appellants complain about the following portion of the instructions:

"Now, if you find from a preponderance of the evidence that the damage to this building was caused by windstorm and you further find that the trusses and columns supporting the roof of the Cree Coach building were in any way poorly constructed, this evidence would not bar a recovery since a building can be insured and this building was insured, whether it was properly constructed or not."

Defendants did not argue, or claim, that the building went down because of faulty construction and did not request any instruction on faulty construction. To the contrary, defendants' requests to charge included, in part, the following language:

"Defendants request the court to charge the jury as follows:

"1. The burden of proof is upon the plaintiff to show by a preponderance of the evidence that windstorm caused the damage to the building. The defendants contend that the damage to the building was caused by snow load on the roof. There is no claim by either party that any cause other than these 2 was the cause of the damage. If you find that snow

load was the cause of the damage, your verdict will be for defendants—no cause for action."

We find no reversible error in the court's charge to the jury.

*Did the court err in instructing in regard to interest?*

The court instructed the jury that if they found for the plaintiff they should allow 5% interest from the date of denial of liability.

Plaintiff's declaration alleged damages of $61,220 to the building and $14,203.25 to the contents.

Defendants' answer, while it denied the amount claimed by plaintiff for damages, in the main was a denial of liability for the following reasons:

"*A.* Any loss or damage which is claimed in said purported proofs of loss was not the direct result of windstorm or any peril insured against under any of the captioned policy.

"*B.* Any loss or damage which is claimed in said purported loss was caused by the collapse of the roof structure under a heavy snow load and was not caused by windstorm or any peril insured against under the policy."

There was no contest on damages at trial, as is evidenced by the court's statement to the jury that "The evidence in this case so far as damages are concerned is not open to conjecture," and the instruction that followed: "If you find for the plaintiff, therefore, your verdict will be for the plaintiff in the amount of $30,408.54."

Defendants, calling attention to the difference between the amount plaintiff asked for in its declaration and the amount plaintiff proved at the trial, which the court instructed the jury to determine as the amount of loss, state:

"We contend that under these circumstances, plaintiff's demand was not liquidated. Its amount

was never known nor determined nor determinable until the day of the trial and the allowance of interest was improper."

Defendants cite 4 Michigan decisions* where plaintiffs' demands for interest on unliquidated claims were denied. None of these cases involved a claim against an insurance company.

Appellee answers by saying:

"Appellee contends therefore that even under appellants' theory appellee is entitled to interest because the damages were in fact liquidated or at least susceptible of definite ascertainment by testimony. * * *

"Certainly the amount of damages sustained has not changed since liability was denied on March 5, 1958, and all parties knew or should have known, or at least could easily have ascertained the exact amount of the loss prior to that date, and therefore it appears that appellants are in no position to claim now that damages were uncertain or unliquidated on the date that they wrongfully rejected the proofs of loss on March 5, 1958."

*United States of America* v. *McDonald Grain & Seed Company* (ND), 135 F Supp 854, involved the issue of interest on the amount of insurer's liability under a fire policy, and the court held (pp 857, 858):

"Interest will be allowed on equitable considerations to prevent unjust enrichment even though neither the insured nor the company has consciously acted wrongly. In *Thorp* v. *American Aviation & General Ins. Co.* (ED Pa 1953), 113 F Supp 764, where the insured owners of a motion picture theater brought action against 6 insurance companies to recover for destruction of the theater by fire, and the amount of the loss was uncertain because of

---

* *Antonoff* v. *Basso*, 347 Mich 18; *Township of Royal Oak* v. *City of Berkley*, 309 Mich 572; *In re Snow's Estate*, 319 Mich 333; *Great Lakes Steel Corp.* v. *Detroit, T. & I. R. Co.*, 317 Mich 1.

honest differences of opinion among the owners and the companies, the court nevertheless held that the companies were liable to pay 3% interest because they had use of the money for over 2 years. The court stated (p 766) that 'to financial institutions (like banks), and to *semifinancial institutions (like insurance companies)* which derive much of their income from interest or capital gains on investments, money is the means through which income is derived. All the time the defendant insurance companies have been withholding payment they have had the *use of the money* due to the plaintiffs *with the consequent possibility of realizing income therefrom.* At the same time plaintiffs have not had the use of the money and have not had the opportunity to derive income from it. Under the circumstances, it would not be fair and just to refuse an allowance of interest to the plaintiffs.' "

The amount of damages sustained was known or could have been easily ascertained by appellants on March 5, 1958, when liability was denied, and the court did not err in instructing in regard to interest.

*Did the court err in eliminating defense based on the snowstorm exclusion clause?*

On cross-examination of plaintiff's witness, Howard Cree, he was asked to read the snowstorm exclusion of the policies, which provides: "This company shall not be liable for loss caused directly or indirectly by (a) frost or cold weather or (b) ice (other than hail), snowstorm, waves, tidal wave, high water or overflow, whether driven by wind or not."

When an argument arose as to admissibility, the court stated:

"Gentlemen, I think you are arguing something that is immaterial. The policies themselves, are in evidence. The policies will control the outcome of this case under proper instruction from the court.

Whether it is read or not can have very little effect. I would be inclined to sustain the objection on the reading of the policy in it at all. I think it is not particularly advisable in the case of an insurance policy to rely upon the reading of a policy. It is impossible to insert the proper meaning. Let us rely on the written provision of the policy."

At the conclusion of plaintiff's proof, defendants requested leave to amend their answers to specifically refer to the snowstorm exclusion clause. The court refused the amendment.

We hold the court did not err in regard to the admission of evidence or in its refusal to permit defendants' amendment, and we quote, with approval, appellee, as follows:

"The court did not rule that the snowstorm exclusion did not constitute a defense. The court merely ruled that, and again within its discretion, it was too late at the conclusion of plaintiff's proofs to permit the defense to amend the pleadings and that defendants were entitled to instructions on its claim as set forth in the pleadings; that is whether damage to the building was caused by the collapse of the roof structure under a heavy snow load and was not caused by windstorm or any peril insured against under the policy.

"Furthermore, the court correctly charged the jury as follows:

" 'There is in this case, no evidence that the damage to the building could have resulted from a combination of snow and windstorm. The building was either damaged by the windstorm or it collapsed from the weight of accumulated snow on the roof.' "

We see no merit to defendants' claim that the court erred in excluding defendants' evidence of weather records, or in admitting plaintiff's exhibits showing material for the construction of the building,

or in denying defendants' motion for judgment *non obstante veredicto* or for new trial.

Affirmed.   Costs to appellee.

CARR, C. J., and DETHMERS, BLACK, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.