ERIN RANCHO MOTELS, INC., APPELLEE, V. UNITED STATES FIDELITY AND GUARANTY COMPANY, APPELLANT.

352 N.W.2d 561

Filed July 20, 1984.   No. 83-398.

James A. Beltzer of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellant.

Lawrence H. Yost of Yost, Schafersman, Yost, Lamme & Hillis, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

HASTINGS, J.

This was an action on an insurance policy to recover a loss sustained by fire. Following trial to a jury, a verdict was returned in favor of the plaintiff, upon which a judgment was entered by the court in the amount of $183,000. The court also awarded the plaintiff attorney fees and prejudgment interest at 12 percent per annum on $140,211 from and after July 1, 1981.

In its appeal to this court the defendant assigns as error: (1) The court failed to submit to the jury the issue of whether the plaintiff has complied with the terms of its insurance policy; (2) The court erroneously chose to define "actual cash value" in its instructions to the jury; (3) The definition of "actual cash value" given by the court was an incorrect definition; and (4) The court was in error in awarding prejudgment interest.

On August 17, 1980, a fire did considerable damage to the motel owned by the plaintiff and which was located in Grand Island, Nebraska. At the time of the loss this complex of buildings was insured against loss by fire by a policy of insurance issued by the defendant, United States Fidelity and Guaranty Company. The morning after the fire, the plaintiff's general manager notified the agent who sold the policy.

The building involved in this litigation was insured for a value of $247,000. Larry Murphy, the plaintiff's general manager, testified that the valuations placed on the various buildings had been recommended by agents of the defendant following an appraisal which they had obtained. After the fire Murphy said that he was unable to agree with the defendant on a

settlement figure. Therefore, in September of 1981 an oral agreement was made between the plaintiff and John Claussen Sons construction company to do the repair work on a cost-plus basis. A short time later, this action was filed.

The evidence presented at the trial, upon which the verdict and judgment apparently were rendered, included a three-page invoice for repairs in the amount of $117,234.06, checks for various light fixtures totaling in excess of $2,800, and the testimony of Murphy that it would cost an additional $103,000 to complete the necessary repairs.

In arguing its first assignment of error the defendant contends the court should have charged the jury to determine whether the plaintiff had complied with the conditions of its policy by furnishing a detailed inventory of the damaged property as well as a sworn proof of loss statement. The particular policy provision to which the defendant refers is found under CONDITIONS APPLICABLE TO SECTION I, which provides in part at paragraph 9 as follows:

In case of loss the named insured shall: . . .

(e) submit to the Company within 60 days *after requested* a signed, sworn statement of loss that sets forth to the best of the named insured's knowledge and belief:

. . .

(5) specifications of any damaged building and detailed estimates for repair of the damage.

(Emphasis supplied.)

The emphasized portion of the requirements is a simple enough answer to the defendant's claim. There is no evidence in the record that a request for such sworn statement of loss was ever made. The record does disclose, through the testimony of Larry Murphy, that an estimate of the fire damage was prepared on September 11, 1980, by John Claussen Sons construction company, which was submitted to a representative of the defendant. George Claussen also testified that he furnished to the defendant a complete set of the original set of plans of the motel, presumably to aid the defendant in obtaining an independent estimate of the damage. The defendant did in fact obtain independent estimates from two other sources.

From our review of the record we see no factual issue whatso-

ever as to the alleged failure of the plaintiff to comply with paragraph 9(e) of the policy provisions.

The next two assignments of error refer to the definition of "actual cash value" as it pertains to the coinsurance clause of the policy. Again, referring to the portion of the policy headed CONDITIONS APPLICABLE TO SECTION I, we find the following:

> 3. Coinsurance Clause. The Company shall not be liable for a greater proportion of any loss to property covered than the limit of liability under this policy for such property bears to the amount produced by multiplying the actual cash value of such property at the time of the loss by the coinsurance percentage stated in the Declarations.

It is argued by the defendant that the actual cash value of the property exceeded the declared "actual cash value" so as to require under the coinsurance clause a reduction of any amount found to be the amount of loss.

In this case there was expert opinion offered by both parties as to the "actual cash value." Plaintiff's expert fixed that value of the particular buildings at $253,700. Based on that valuation, there would be no requirement that the amount of loss be reduced. However, the defendant's expert calculated "actual cash value" at $376,000, which would have required a reduction in the amount of actual loss to approximately 82 percent.

However, the "actual cash value" as found by the jury was $300,700, which would require no change in the amount found to constitute the actual loss. Such a finding constitutes a decision as to a question of fact which will not be disturbed on appeal if supported by credible evidence. There was sufficient credible evidence in support of that finding.

Although the defendant alleges that the court erred in choosing to define "actual cash value" at all in its instructions, as well as utilizing an incorrect definition, it seems apparent from its argument that the defendant is not really complaining that the attempt to define was made but, rather, that it was an incorrect definition.

The definition of which complaint has been made is found in instruction No. 6. That instruction reads as follows:

> The term "actual cash value" as used in these instruc-

tions and in the insurance policy in question herein means that amount which would be paid for the property in question by a willing purchaser, who is not compelled to buy it when purchasing such property from a willing seller who is not compelled to sell it. *In determining the actual cash value of the property in question, you shall consider all of the facts and circumstances shown by the evidence to affect or having a tendency to establish its value.*
(Emphasis supplied.)

The record discloses that the plaintiff's expert on value used, in arriving at his opinion of such value, the cost less depreciation basis, comparable sales method, and income approach. Defendant's expert insisted that the replacement cost less depreciation was the only method suitable for use in arriving at "actual cash value" for coinsurance purposes.

The term "actual cash value" is utilized in another portion of the policy. In VI. VALUATION it is stated as follows:

The following bases are established for valuation of property:

. . . .

D. All other property at actual cash value at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, nor in any event for more than the interest of the named insured.

In neither instance, in the section just quoted or in the coinsurance section previously cited, is the term "actual cash value" defined within the policy language. However, this court has defined "actual cash value" when used in the connotation of the amount of the loss. In *Borden v. General Insurance Co.*, 157 Neb. 98, 113-14, 59 N.W.2d 141, 149-50 (1953), we said:

The jury should have been instructed, in the condition of the record, that actual cash value of property, as the words are used in this case, means the market value of it; that market value is the amount for which property may be sold by a willing seller who is not compelled to sell it to a buyer who is willing but not compelled to buy it . . . and that the jury in deciding the market value of the property should consider the situation and condition of the prop-

erty as it was at the time and all the other facts and circumstances shown by the evidence that affected or had a tendency to establish its value.

This remains the law of Nebraska to this date.

However, the defendant urges us to adopt the "broad evidence rule" as set forth in *Messing v. Reliance Ins. Co.*, 77 N.J. Super. 531, 187 A.2d 49 (1962), for determining "actual cash value" as used in the coinsurance clause. The court, after detailing the shortcomings of both market value and replacement cost less depreciation as methods of determining actual cash value, ordered as follows:

The appraisers and umpire are instructed that in determining the actual cash value of the property involved they may consider every fact and circumstance which would logically tend to the formation of a correct estimate of the building's value, including the original cost, the economic value of the building, the income derived from the building's use, the age and condition of the building, its obsolescence, both structural and functional, its market value, and the depreciation and deterioration to which it has been subjected.

*Id.* at 535, 187 A.2d at 51-52.

We have no particular quarrel with that definition. However, we believe that actual cash value must still be measured as an economic unit, i.e., related to what, in terms of value, one could receive for his or her property. Fair market value is a term which has been used and is generally understood by experts and lay people alike, and which may be found by employing, if you will, the broad evidence rule. The definition employed by the trial court was taken almost verbatim from *Borden*, and, by it, the jury was instructed to consider all facts and circumstances shown by the evidence to affect or establish such value. We continue to approve that definition for "actual cash value" wherever it is used in a policy of property damage insurance.

Finally, the defendant insists that it should not have been required to pay prejudgment interest because the amount of recovery was not a liquidated amount. We agree. The amount of the loss was the subject of diverse opinion testimony. Where the amount of loss cannot be computed without opinion or dis-

cretion, the claim is unliquidated and prejudgment interest is not recoverable. *Holt County Co-op Assn. v. Corkle's, Inc.*, 214 Neb. 762, 336 N.W.2d 312 (1983). This is still true even though the party who is required to pay has made an offer of settlement in a specific amount.

The judgment of the trial court is affirmed except for the award of prejudgment interest. The defendant is ordered to pay $2,000 toward the fees of the plaintiff's attorney in this court.

AFFIRMED AS MODIFIED.

SHANAHAN, J., concurring in part, and in part dissenting.

I agree with the majority that judgment on the jury's verdict should be affirmed, but I disagree on the disallowance of prejudgment interest.

The motel burned on August 17, 1980. On August 18 United States Fidelity and Guaranty Company (U.S.F. & G.) learned about the fire, and on the same day a supervisor-adjuster of U.S.F. & G. inspected the devastation. There was no question that the loss was covered by insurance. As expressed by U.S.F. & G., the insurance company embarked on a determination of repairs to restore its insured to a "preloss condition."

On October 22, 2 months after the fire, a contractor hired by U.S.F. & G. surveyed the fire damage to the motel and then prepared an extensive written itemization of damages and repairs. U.S.F. & G.'s contractor meticulously classified and listed damages in 10 separate categories and estimated repairs at $111,310. U.S.F. & G. received its contractor's estimate on November 24, 3 months after the fire.

After a series of collaborated adjustments by the insurance company and its contractor concerning the November 24 itemization, on February 26, 1981, U.S.F. & G. recognized the extent of the loss and repairs at the figure of $141,643, now 6 months after the fire. However, U.S.F. & G. quietly restrained its welling magnanimity until June 25, when U.S.F. & G. succumbed in a burst of its own largess by a letter to the motel owner and proposed a settlement, 10 months after the fire, 7 months after the exact nature and extent of the damage had been determined, and after 4 months of the insurance company's self-imposed and inexplicable reclusion following determination of the monetary amount of necessary repairs in the esti-

mation of U.S.F. & G.

Therefore, as early as October 22, 1980, not only was the fire loss determinable, but at February 26, 1981, the monetary amount of the loss in fact had been determined as far as U.S.F. & G. was concerned. The criterion for recoverable interest should not be whether the claim is liquidated or unliquidated; rather, the test should be determinability of the amount of damages claimed. See Note, *Recovery of Prejudgment Interest on an Unliquidated State Claim Arising Within the Sixth Circuit*, U. Cin. L. Rev. 151 (1977).

Today numerous courts award prejudgment interest as a basic element of damages, even in contract cases. See *Cree Coach Co. v. Wolverine Ins. Co.*, 366 Mich. 449, 115 N.W.2d 400 (1962); cf. *State v. Phillips*, 470 P.2d 266 (Alaska 1970) (tort). Prejudgment interest has been recoverable for an insured fire loss, although an insured's claim was unliquidated in the sense that the exact monetary amount of the loss was disputed and required resolution by litigation. See, *Northwestern States Portland Cem. Co. v. Hartford F. I. Co.*, 360 F.2d 531 (8th Cir. 1966) (applying the law of Iowa); *Aetna Insurance Company v. Barnett Brothers, Inc.*, 289 F.2d 30 (8th Cir. 1961); *J. P. Cope Hotels Co. et al. v. Ins. Co.*, 126 Pa. Super. 260, 191 A. 636 (1937); *Bernhard v. Rochester German Ins. Co.*, 79 Conn. 388, 65 A. 134 (1906); *The Peoria Marine and Fire Insurance Co. v. Lewis et al.*, 18 Ill. 553 (1857).

Underlying recoverability of prejudgment interest is a fundamental aspect of our jurisprudence, namely, to provide full and adequate compensation to a claimant and to award damages for delay in payment of money otherwise due a claimant. In cases such as the one before us, interest should be recoverable and awarded as a judicial measure originating in basic fairness—the right to full and fair compensation on a just claim. Therefore, I believe that prejudgment interest should have been allowed in this case because there was never a question that the loss occurred, no question that the insurance company owed the loss, and no doubt that the extent of damages was indeed determinable, and the monetary amount of the loss had in fact been determined by the insurance company well in advance of any offer of settlement or ensuing litigation.

GRANT, J., joins in this concurrence and dissent.